UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-14322-BLOOM

NATHAN JORDAN,

    Plaintiff,

v.

SHERIFF RICHARD DEL TORO,
*et al.*,

    Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Sheriff Richard Del Toro and Defendant Captain Lyons's (collectively "Defendants") Motion for Final Summary Judgment, ECF No. [22] ("Motion"), filed on November 25, 2025. Plaintiff Nathan Jordan ("Plaintiff") filed an untimely Response to Defendants' Motion for Final Summary Judgment, ECF No. [24] ("Response"), dated December 23, 2025. Defendants filed a Reply to Plaintiff's Response to Defendants' Motion for Final Summary Judgment, ECF No. [25] ("Reply"), on January 12, 2026. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is **GRANTED**.

**I.   BACKGROUND**

    **A.  Plaintiff's Complaint**

On September 3, 2025, Plaintiff filed a *pro se* Complaint under the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights in three separate ways while he was a pretrial detainee at the St. Lucie County Jail. ECF No. [1]. First, Plaintiff alleged that he had not received a vitamin-fortified beverage on the jail's "Master Menu." *Id.* at 12. Second, Plaintiff claimed

that he had been denied outdoor exercise in the recreation yard for the entire two years that he was incarcerated at the jail. *Id*. And third, he claimed that the jail was scanning, copying, and keeping inmates' legal mail. *Id*.

This Court screened Plaintiff's Complaint under 28 U.S.C. § 1915(e) and found that claim one failed to state a claim for relief but claims two and three adequately alleged constitutional violations. ECF No. [4]. Specifically, the Court found that the Complaint plausibly alleged that the Defendants, as supervisory officials, were liable in both their individual and official capacities because they instituted the alleged policies that caused the constitutional violations at issue in claims two and three. *Id.* at 6-7.

The Defendants then filed a Motion for More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e), seeking clarification as to whether Plaintiff intended to sue them in both their individual and official capacities. ECF No. [10]. The Court granted the Defendants' Motion for More Definite Statement — ordering the Plaintiff to amend his Complaint to indicate whether he intends to sue Defendants in their individual or official capacities, or both, and to adequately describe the conduct of each Defendant which forms the basis of his claims and the date(s) on which that conduct occurred. ECF No. [12]. Plaintiff filed an unsigned Amended Complaint, ECF No. [14], which the Defendants moved to strike, ECF No. [16]. The Court granted Defendants' Motion to Strike the Amended Complaint, ordering Plaintiff to file a Second Amended Complaint by December 13, 2025. ECF No. [17].

Plaintiff filed the operative Complaint for Violation of Civil Rights, ECF No. [19] ("Second Amended Complaint"). In the Second Amended Complaint, Plaintiff asserts two claims against Defendants, alleging First and Fourteenth Amendment violations while he was an inmate at the St. Lucie County Jail. Plaintiff alleges that "[a]t no time during the over 2 years [Plaintiff] was incarcerated at the St. Lucie County Detention Center was [Plaintiff] allowed the opportunity to attend

2

the outdoor recreation yards to exercise." *Id*. at 8. He claims that Defendant Sheriff Richard Del Toro, the St. Lucie County Sheriff and "ranking officer in charge of jail policy from January 1, 2025 to September 30, 2025," Defendant Sheriff Ken Mascara, the St. Lucie County Sheriff and "ranking officer in charge of jail policy on September 7, 2023 . . . until the date he was discharged from that position," and Defendant Captain Lyons, the captain at the jail who is "in charge of directing the daily operations," have instituted a policy prohibiting "high custody classified men" from visiting the outdoor recreation yard to exercise. *Id*. Plaintiff claims that "[n]obody in the Delta dorms of the jail is allowed to attend the outdoor recreation yards to exercise, but other dorms are including the high custody classified women." *Id*.

In his third claim, Plaintiff alleges that since around February of 2024, jail officials have maintained a policy of "scanning, copying, and keeping" all inmates' legal mail. *Id.* He alleges that "[t]he copying machine has a memory card and [jail officials] do not shred the original copies of my legal mail." *Id*. Plaintiff contends that "[a]s the ranking officer[,] Sheriff Del Toro during his coinciding tenure and Sheriff Ken Mascara during his coinciding tenure are responsible for this policy and directing it to continue. Captain Lyons is responsible for seeing this policy carried out." *Id*.

**B. Defendants' Motion for Summary Judgment**

Defendants filed the instant Motion, ECF No. [22], together with Defendants' Local Rule 56.1 Statement of Material Facts, ECF No. [23] ("SOMF"). Plaintiff filed an untimely Response, and failed to file a Statement of Material Facts in Opposition.

In the SOMF, Defendants present the following facts. Plaintiff was incarcerated in the St. Lucie County Jail from September 7, 2023, through September 30, 2025. *Id*. ¶ 1. Plaintiff was incarcerated for multiple felony counts of lewd or lascivious battery on a child under the age of 16. *Id.* ¶ 2. Due to the nature of Plaintiff's charges, he was classified accordingly for his protection. *Id*. ¶ 4. Plaintiff's classification was not a punishment, but rather an effort to keep him safe and not in

contact with other inmates who would likely attempt to hurt or kill him because of his charges being that of a child sex offender. *Id*. ¶ 4. At no point during Plaintiff's incarceration was he punished by Defendants and denied access to the jail's recreation facilities. *Id.* ¶ 5. Plaintiff used the jail's outdoor recreation facilities at least 32 times during his incarceration. *Id.* ¶ 10.

The jail has two recreation area styles: one style is for inmates of low custody and classification levels to include General Population; the other style is a higher-security recreation area where inmates of higher custody and classification levels are housed. *Id.* ¶ 12. Because of Plaintiff's child sex offense charges, he was housed in a unit with a higher-security recreation area. *Id.* ¶ 13. This higher-security recreation area, which Plaintiff used on dozens of occasions, is outside with sunlight and fresh air; however, a combination of wall and fence is utilized to provide security and protect the inmates. *Id.* ¶ 14.

At no point during Plaintiff's incarceration did the jail keep or save any of Plaintiff's legal mail. *Id.* ¶ 16. At no point during Plaintiff's incarceration did the jail have a custom or policy of saving Plaintiff's legal mail. *Id.* ¶ 17. If the mail is legal mail, the mail is sent directly to the jail. *Id*. ¶ 20. The legal mail is then opened in the presence of the inmate. *Id.* The only thing that is looked at by the jail is the letterhead and the signature to verify that the mail is, in fact, legal mail. *Id.* Once verified, the legal mail is copied with the inmate being given a pink copy to show that the process has been followed. *Id.* The original legal letter is then shredded. *Id*. No mail is saved or stored on the copier. *Id.* This process prevents potential contraband or narcotics being introduced into the jail that might be on the original paper. *Id.* Plaintiff's legal mail was never stored or saved by the Defendants and/or the jail, and his legal mail was never accessed outside of his presence. *Id.* ¶ 21.

II.     **LEGAL STANDARD**

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the nonmoving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th

Cir. 1983).

Local Rule 56.1(a) provides that "[a] motion for summary judgment and the opposition to it shall each be accompanied by a separate . . . Statement of Material Facts . . ." which "shall list the material facts that the movant contends are not genuinely disputed." S.D. Fla. L.R. 56.1(a)(1). Where, as here, the non-movant fails to file a Statement of Material Facts in Opposition, "[a]ll material facts in [the moving] party's Statement of Material Facts may be deemed admitted . . ." S.D. Fla. L.R. 56.1(c); *see also Jones v. Gerwens*, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) ("[f]acts set forth in the Defendants' Statement of Undisputed Facts which are not controverted, are deemed admitted" pursuant to the Local Rules).

When considering an unopposed motion for summary judgment, however, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Mia., Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Therefore, "[a]lthough the statements contained in [the] Defendants' Statement of Material Facts are deemed admitted, [the] court must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citing *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008)). "Even in an unopposed motion, the moving party still bears the burden of identifying 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "That is, the movant is not absolve[d] . . . of the burden of showing that [he] is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Reese*, 527 F.3d at 1268-69 (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)).

### III. DISCUSSION

Defendants seek summary judgment on Plaintiff's Fourteenth Amendment claim based on the complete denial of outdoor exercise and Plaintiff's First Amendment claim based on the scanning and copying of his legal mail. Plaintiff failed to timely respond to Defendants' Motion and did not file a Statement of Material Facts in Opposition. The Defendants have supported their Statement of Material Facts with record evidence. Therefore, in accordance with Local Rule 56.1, the Court deems Defendants' Statement of Material Facts admitted. *See* S.D. Fla. L.R. 56.1(c); *see also Jones*, 874 F.2d at 1537 n.3. Accepting these facts as true, Defendants have shown that they are entitled to summary judgment on each of Plaintiff's claims.

**A. Fourteenth Amendment Claim for the Complete Denial of Outdoor Exercise.**

"[I]n regard to providing pretrial detainees with such basic necessities as food, living space, and medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985). The Eighth Amendment's standard requires a plaintiff to satisfy both objective and subjective components. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). So a prisoner claiming that the conditions of his confinement violate the Eighth Amendment must first show that the condition objectively exposes the prisoner to "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the prisoner can satisfy that objective inquiry, he must then satisfy a subjective one by showing that the prison official who imposed the challenged condition had a "sufficiently culpable state of mind." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Because Plaintiff's claim involves the deprivation of access to recreational activity, he must satisfy the Eighth Amendment's objective and subjective standards to prevail on his claim under the

Fourteenth Amendment's Due Process Clause. *See Christmas v. Nabors*, 76 F.4th 1320, 1331 (11th Cir. 2023). Plaintiff has not met either standard.

As for the objective inquiry of a Fourteenth Amendment claim, Plaintiff was not completely denied access to outdoor recreation. Rather, Plaintiff's access to outdoor exercise was limited because of his classification as a child sex offender. ECF No. [23] ¶ 4. In *Christmas v. Nabors*, 76 F.4th 1320 (11th Cir. 2023), a pretrial detainee alleged that jail officials had "denied [him] access to outdoor recreation for two years." The Eleventh Circuit held that the "complete denial of outdoor exercise" without penological justification violates the "objective inquiry" of a Fourteenth Amendment claim (under the Eighth Amendment standard). *Id*. at 1331.

Here, Plaintiff cannot satisfy the objective inquiry of a Fourteenth Amendment claim for two reasons. *First*, there was never a "complete denial of outdoor exercise," because Plaintiff, in fact, did use the jail's high-security, outdoor recreation facility at least 32 times. ECF No. [23] ¶¶ 10, 14. The high-security recreation facility, which Plaintiff was required to use due to his child sex offense charges, is outside with sunlight and fresh air. *Id.* ¶ 14. Plaintiff's access and use of the jail's high-security recreation facility does not rise to a constitutional violation under the Fourteenth Amendment's objective inquiry.

*Second*, Plaintiff's classification — which restricted his access to the jail's recreational facility available to inmates of low custody and classification levels and subjected him to the jail's high-security recreational facility — was done with a penological justification. Plaintiff was classified accordingly due to the nature of his charges of a child sex offender. *Id.* ¶ 4. That classification was for his protection and as an effort to keep him safe. *Id.* Classifying child sex offenders in protective custody is routine in America's jail and prison system due to the number of alleged pedophiles that have been injured or murdered while incarcerated either awaiting trial or serving a sentence. *Id.* Plaintiff's restricted use of outdoor exercise with the legitimate penological justification of protecting

Plaintiff does not violate the objective standard of a Fourteenth Amendment claim. *Christmas*, 76 F.4th at 1331.

Regarding the subjective inquiry of a Fourteenth Amendment claim, the Defendants did not act with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). There is no record evidence that the Defendants acted with deliberate indifference to Plaintiff's health or safety. *Id.* ("In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]"). "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than negligence." *Williams v. Dep't of Corr.*, 678 F. App'x 877, 882 (11th Cir. 2017) (citing *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)). By classifying Plaintiff due to the nature of his charges of a child sex offender, which subjected Plaintiff to the jail's high-security, outdoor recreation area, the Defendants did not act with subjective knowledge of a risk of serious harm to Plaintiff. To the contrary, the record evidence supports that Plaintiff's classification was done "for his protection. Plaintiff's classification was not a punishment[.]" ECF No. [23] ¶ 4. Accordingly, Defendants were not deliberately indifferent to Plaintiff's conditions of confinement and are entitled to summary judgment.

**B. First Amendment Claim for Scanning and Keeping Plaintiff's Legal Mail.**

"A simple rule has governed prison mail procedures in our Circuit for nearly 50 years: a prison official may not open an inmate's properly marked legal mail outside of his presence." *Mitchell v. Peoples*, 10 F.4th 1226, 1228 (11th Cir. 2021). "If a prison official does so, that official violates the inmate's First Amendment 'right to free speech.'" *Christmas*, 76 F.4th at 1328 (quoting *Mitchell*, 10 F.4th at 1230). "[A] prison official may open a prisoner's mail in the prisoner's presence — but only for the purpose of permitting that official to check the mail for contraband, not for allowing the official to read the mail." *Id.* (citing *Mitchell*, 10 F.4th at 1230). In *Christmas*, the plaintiff alleged that the

9

defendants "made [plaintiff] open his legal mail in [the defendants] presence and scan it into a computer that allegedly contains 'a memory chip.'" *Id.* at 1329. The Eleventh Circuit found that this kind of technology "stores a prisoner's mail and, at least on the allegations in [plaintiff's] Complaint, enables jail officials to access a prisoner's mail outside his presence." *Id.*

Here, however, Plaintiff's legal mail was never accessed outside of his presence, nor was it stored on the copier. ECF No. [22] ¶¶ 17-21. Instead, the Defendants follow a specific protocol for handling legal mail: (1) the legal mail is sent directly to the jail; (2) the legal mail is opened in the presence of the inmate; (3) the legal mail is verified as legal mail by only looking at the letterhead and signature; (4) once verified, the mail is copied and the inmate is given a pink copy to show that the process has been followed; (5) the original legal mail is shredded. *Id.* ¶ 20. No legal mail is saved or stored on the copier. *Id.* The jail employs this protocol to ensure contraband or narcotics are not being introduced into the jail that might be on the original paper. *Id.* As to Plaintiff's legal mail, at no point during Plaintiff's incarceration did the jail keep or save any of Plaintiff's legal mail or have a custom or policy of saving Plaintiff's legal mail. *Id.* ¶¶ 16, 18. And at no point during Plaintiff's incarceration did the Defendants store, save, or access Plaintiff's legal mail outside of Plaintiff's presence. *Id.* ¶¶ 17, 21. Accordingly, the record evidence reflects that Defendants did not violate Plaintiff's First Amendment rights regarding Plaintiff's legal mail and are entitled to summary judgment.

IV.     **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion for Final Summary Judgment **ECF No. [22]** is **GRANTED**.

2. This case is **CLOSED**, and all pending motions are **DENIED AS MOOT**.

3. Pursuant to Fed. R. Civ. P. 58, final judgment will be entered by separate order.

4. The Clerk shall **CLOSE** this case.

Case No. 25-cv-14322-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 26, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies provided to:

Nathan Jordan, *Pro Se*
K86153
Wakulla Correctional Institution
Inmate Mail/Parcels
110 Melaleuca Drive
Crawfordville, FL 32327

Allen Coleman Sang
1850 Lee Road
Suite 334
Winter Park, FL 32789
407-622-7888
Fax: 407-622-7890
Email: acs@carmanbeauchamp.com